## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LOOKS FILMPRODUKTIONEN GMBH | * | |
| Lützowufer 1 | * | |
| 10785 Berlin | * | |
| Germany, | * | |
| | * | |
|      Plaintiff, | * | |
| | * | |
|      v. | * | Civil Action No. 1:14-cv-01163 |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| Washington, DC  20505, | * | |
| | * | |
|      Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff LOOKS Filmproduktionen GmbH brings this action against Defendant Central Intelligence Agency pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2.    Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff LOOKS Filmproduktionen GmbH ("LOOKS") is a German limited

liability company which produces and internationally distributes documentary films.  LOOKS is

a representative of the news media within the meaning of 5 U.S.C. § 552(a)(4)(A).

4.      Defendant Central Intelligence Agency ("CIA") is an agency within the meaning

of 5 U.S.C. § 552(e), and is in possession and/or control of the records requested by LOOKS

which are the subject of this action.

## BACKGROUND

5.      Between 1950-89, the official state security service of the German Democratic

Republic (East Germany) was the Ministry for State Security, commonly known as the Stasi.

6.      Erich Mielke ("Mielke") was the head of the Stasi from 1957 until he was

removed in 1989 after the fall of the Berlin Wall.  This position made him one of the most

powerful intelligence figures in the Communist Bloc, and one of the most powerful figures,

period, in East Germany.

7.      After the reunification of Germany in 1990, the Stasi was formally dissolved and

Mielke was tried and convicted for murders he committed in 1931.  He was later released from

prison due to poor health, and he died in 2000.

8.      Since 2012 LOOKS has been producing a 90-minute documentary film about

Mielke.  As part of this production, LOOKS has been collecting records about Mielke created by

the Stasi and other intelligence agencies.

## **FIRST CAUSE OF ACTION**

## **(RECORDS DENIAL)**

9.      LOOKS repeats and realleges the allegations contained in all paragraphs set forth

above.

10.     On 11 October 2012, LOOKS submitted to CIA a FOIA request for all records

about Mielke.

11.     In this request, LOOKS requested a public interest fee waiver and classification as

a representative of the news media.

12.     On 31 October 2012, CIA acknowledged receipt of this request and assigned it

Request No. F-2013-00077.  CIA released two previously released records and refused to

confirm or deny the existence or nonexistence of other responsive records (a "*Glomar*

response"), alleging that that fact is currently and properly classified intelligence sources and

methods information and is exempt from disclosure under FOIA Exemptions (b)(1) and (b)(3).

CIA did not address LOOKS' fee waiver or fee category requests.

13.     On 21 December 2012, LOOKS appealed CIA's *Glomar* response, and CIA

acknowledged this appeal on 23 January 2013.

14.     On 27 March 2013, CIA denied LOOKS' appeal, affirming its previous *Glomar*

response.

15.     On 30 September 2013, LOOKS, through counsel, requested reconsideration of

CIA's determination, arguing that it was unreasonable for CIA to argue that the fact that it had

an intelligence interest in the former head of the Stasi is a properly classified secret.

16.     On 28 October 2013, LOOKS, through counsel, requested the assistance of the

Office of Government Information Services ("OGIS") with this request.  OGIS is a component of

3

the National Archives and Records Administration ("NARA") tasked with, *inter alia*, mediating disputes between FOIA requesters and agencies.  OGIS acknowledged this request on 31 October 2013 and assigned it Case No. 201400045.

17.     On 17 December 2013, OGIS informed LOOKS that CIA would not process its request for reconsideration.  OGIS stated, "[CIA Information and Privacy Coordinator Michele] Meeks suggested that your client may instead wish to submit a new request, referring to the previous request and including the information that you submitted in your request for reconsideration.  She also suggested that it may be worthwhile to refine this request to focus around a specific historical event, without referring to a specific individual."

18.     On 9 January 2014, LOOKS' counsel performed a cursory search using the CIA Records Search Tool ("CREST"), a searchable electronic database of declassified CIA records available at the National Archives in College Park, MD, and located twenty-three records about Mielke.

19.     After performing this search, LOOKS' counsel emailed OGIS, stating, "I just got back from a trip to NARA, where I found 23 records in the CIA CREST database about Erich Mielke, and I would probably find many more if I did more than a cursory search.  If the CIA really wants to be obdurate and say that they won't reconsider their position, they can, but my client is ready to file suit, and if we do, I don't foresee a judge saying that whether or not the CIA had an intelligence interest in the head of East German Intelligence is properly secret when they've released numerous records about him.  Please go back to them and encourage them to put aside this childish argument that 'they don't reconsider.'  If an agency won't reconsider a decision as a matter of policy, then what's the point of their Public Liaison, or for that matter OGIS?"

20.     On 5 February 2014, OGIS emailed LOOKS' counsel, stating, "After discussions with OGIS, the CIA has agreed to reconsider its response to 2013-00077.  Please submit a new request to CIA for these records (along with any relevant information), and indicate in that request that you are resubmitting your FOIA request as a result of discussions between OGIS and the CIA's Information and Privacy Coordinator.  This will ensure that your request is not treated like a new request, but rather will be treated like a reconsideration.  That said, the CIA will be assigning a new case number to your reconsidered request for its own administrative purposes.  Regarding the substance of your request, the CIA strongly encourages you to refine your request to finished intelligence records.  This is likely to produce a more favorable response."

21.     On 24 February 2014, LOOKS, through counsel, submitted two FOIA requests to CIA.  The first request was for "all records about former East German Minister of State Security Erich Mielke maintained or created by the Medical and Psychological Analysis Center ("MPAC") or its predecessor Office of Leadership Analysis ("OLA")."  LOOKS added, "This request is being submitted with another, broader request for records about Mielke.  The CIA is *not* to combine these requests, as they have been filed separately to allow you to process and release records in response to the narrower request—this one—while still processing the records responsive to the broader request."

22.     The second request was for all records about Mielke *not* maintained or created by MPAC/OLA.  This request stated, "This is a resubmission—with some minor modifications—of FOIA Request No. F-2013-00077, pursuant to discussions between your office and the Office of Government Information Services ("OGIS"), and we submit it with the expectation that you will treat it as a reconsideration and not as a new request.  . . . OGIS suggested that you would prefer if we were to limit the request to finished intelligence products, but at this point we regret that

5

we are unable to do so.  However, once you perform your search and identify any responsive records, my clients will be amenable to discussing the scope of the request with you with the intent of working with you to ensure that you do not waste any time reviewing records in which they have no interest.  However, you will need to provide information about the types of records you have located before we can give you any guidance on limiting the scope of the request."

23.     In each request, LOOKS requested a public interest fee waiver and classification as a representative of the news media.  LOOKS also specified in each request that CIA should provide all responsive records in electronic form.

24.     On 14 March 2014, CIA acknowledged receipt of both requests and, against LOOKS' specific instructions to the contrary, combined them into a single request, which was assigned Request No. F-2014-00890.

25.     CIA's letter stated, "Our re-review of your client's purported modifications shows no alteration to the scope of records being sought.  In both examples, your client seeks all records in CIA's possession on a former East German official.  Your client's revisions do not alter the scope of records being sought but rather catalog several CIA repositories.  Seeing no alteration in your client's stance and noting that your client declined to act on a recommendation proffered by the Office of Government Information Services, in accordance with section 3.6(a) of Executive Order 13526, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request."  CIA did not address LOOKS' fee waiver or fee category requests.

26.     On 22 May 2014, LOOKS, through counsel, wrote CIA, "On 14 March 2014 you denied this request.  Even though you assigned this request a new number (F-2014-00890), it was in fact a reconsideration of an appellate determination regarding a previous request, F-2013-

00077.  Because that request already made its way through both an initial denial and an appellate affirmation, my client considers its administrative remedies to be exhausted and formal appeal unnecessary.  However, in a final attempt to resolve this matter short of litigation, my client does ask you to carefully review this determination at the appellate level and reverse the unreasonable position your agency has taken.  This letter is being sent as a courtesy and does not constitute a concession that further review by your agency is required prior to the initiation of litigation.  In the interest of resolving this dispute amicably, we will allow the CIA the full 20 business days to which it would be entitled if this were a formal appeal, but after that span has passed, my client reserves the right to seek judicial review of the CIA's response at its convenience."

27.      On 19 June 2014, CIA responded to LOOKS' letter.  CIA stated that it would not reconsider its decision because it "does not have a reconsideration mechanism," but that it would instead process the letter as an appeal of its *Glomar* response.

28.      Because CIA has affirmed its initial *Glomar* response not once but twice (plus the fact that more than twenty business days have passed since LOOKS sent it the last letter, which it elected to classify as an administrative appeal), LOOKS has exhausted all required administrative remedies.

29.      LOOKS has a legal right under FOIA to obtain the information it seeks in the electronic form it requested, to be classified as a representative of the news media, and to receive a public interest fee waiver, and there is no legal basis for the denial by CIA of said rights.

## SECOND CAUSE OF ACTION

## (AGGREGATION OF REQUESTS)

30.     LOOKS repeats and realleges the allegations contained in all paragraphs set forth above.

31.     At multiple points during this process, CIA has made clear that its primary objection is that LOOKS is requesting "all records in CIA's possession" about Mielke.  CIA indicated to OGIS that it was willing to process requests for "finished intelligence records" or requests "focused around a specific historical event."

32.     Accordingly, in an effort to compromise with CIA, on 24 February 2014, LOOKS made two separate requests to CIA.  The first was limited to records created or maintained by MPAC/OLA—the CIA office responsible for, *inter alia*, profiling and performing psychological analyses of foreign leadership figures.  Most if not all MPAC/OLA records responsive to this request would be finished intelligence products, and many would be "focused around a specific historical event" (i.e., a prediction or retrospective analysis of Mielke's behavior at a certain time or in response to a specific event).

33.     CIA would thus be arguably able to process the request for MPAC/OLA records without compromising its ability to assert a *Glomar* response for other records (although, as previously shown, its stated interest in Mielke precludes it from asserting a full *Glomar* response regarding any intelligence interest in him, period).

34.     This request specifically directed CIA not to combine the two requests.

35.     CIA's regulations allow it to aggregate FOIA requests *only* when the requests "are merely discrete subdivisions of the information actually sought *for the purpose of avoiding or reducing applicable fees*."  32 C.F.R. § 1900.13(j) (emphasis added).

8

36.     These two requests were clearly not filed "for the purpose of avoiding or reducing applicable fees."  The first request clearly stated that the reason for filing separate requests was "to allow you to process and release records in response to the narrower request—this one—while still processing the records responsive to the broader request."  Moreover, as a representative of the news media who had requested a public interest fee waiver, LOOKS had no reasonable expectation of being *assessed* any fees.

37.     Upon information and belief, CIA combined these requests to allow it to continue to argue that LOOKS request was too broad and not because it reasonably concluded that the requests were filed "for the purpose of avoiding or reducing applicable fees."  Therefore, CIA violated its own regulations and FOIA by combining these two requests into one instead of treating them separately as specifically requested.

38.     As a result, LOOKS was harmed because: a) CIA did not independently process the first request, which is not vulnerable to CIA's complaints about scope and would not allow a *Glomar* response; and b) even in the absence of a *Glomar* response, CIA would complete processing the first request well in advance of the second, thereby entitling LOOKS to a release of those MPAC/OLA records much sooner than it would receive from the processing of a combined request.

39.     CIA regulations do not require an administrative appeal of a decision to aggregate requests.  *See* 32 C.F.R. § 1900.42 ("A right of administrative appeal exists whenever access to any requested record or any portion thereof is denied, no records are located in response to a request, or a request for a fee waiver is denied.").  Therefore, LOOKS has exhausted all required administrative remedies.

40.     LOOKS has a legal right under FOIA to have CIA process its two requests separately and independently as they were submitted, and there is no legal basis for the denial by CIA of said right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LOOKS Filmproduktionen GmbH prays that this Court:

(1)     Order the Central Intelligence Agency to release all requested records to it;

(2)     Order CIA to release records in the electronic form LOOKS requested;

(3)     Order CIA to grant LOOKS' requests for public interest fee waivers;

(4)     Order CIA to classify LOOKS as a representative of the news media;

(5)     Order CIA to process LOOKS' request for MPAC/OLA records separately and independently from the other request;

(6)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(7)     Award reasonable costs and attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(d), or any other applicable law;

(8)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(9)     Grant such other relief as the Court may deem just and proper.

Date:   July 11, 2014

Respectfully submitted,


/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*