# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOOKS FILMPRODUKTIONEN GMBH, | |
| Plaintiff, | |
| v. | Civil Action No. 14-1163 (BAH) |
| CENTRAL INTELLIGENCE AGENCY, | Chief Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

The plaintiff, LOOKS Filmproduktionen GMBH ("LOOKS"), a German documentary film production and distribution company, brings this case against the Central Intelligence Agency ("CIA"), asserting two claims: (1) that the CIA unlawfully denied the plaintiff the requested records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and (2) that the CIA wrongfully aggregated the plaintiff's two FOIA requests, in violation of the FOIA and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* First Am. Compl. ("FAC") ¶¶ 3, 30, 41, ECF No. 25. Pending before the Court are the CIA's motions for summary judgment on the first claim and to dismiss the second claim, Def.'s Mot. Summ. J. ("Def.'s SJ Mot."), ECF No. 16; Def.'s Supp. Mot. Dismiss Pl.'s APA Claim ("Def.'s Mot. Dismiss"), ECF No. 27, and the plaintiff's cross-motion for partial summary judgment on part of the first claim and the second claim in its entirety, Pl.'s Cross-Mot. for Partial Summ. J. ("Pl.'s Mot."), ECF No. 31. For the reasons set out below, the CIA's motion for summary judgment is granted, the CIA's motion to dismiss the second claim is denied as moot, and the plaintiff's cross-motion for partial summary judgment is denied as moot.

## I.      BACKGROUND

LOOKS[1] alleges that it is currently making a documentary film about Erich Mielke, the former head of the Ministry for State Security, also known as the "Stasi," of the erstwhile German Democratic Republic, colloquially known as East Germany.  FAC ¶¶ 5, 6, 8.  On October 11, 2012, LOOKS submitted a FOIA request to the CIA seeking "all records regarding Erich [Fritz Emil] Mielke, Minister of State Security in the German Democratic Republic (GDR)."  Def.'s St. Mat. Facts as to Which There Is No Genuine Issue ("Def.'s SMF") ¶ 1 (alteration in original),  ECF No. 16-1; Pl.'s Resp. to Def.'s SMF ("Pl.'s SMF Resp.") ¶ 1, ECF No. 30; Pl.'s St. Mat. Facts as to Which There Is No Genuine Issue ("Pl.'s SMF") ¶ 2, ECF No. 31.  On October 31, 2012, the CIA's Information and Privacy Coordinator told the plaintiff, in a letter, stating that after "conduct[ing] a search of its previously released documents database for any responsive records," two responsive documents were located and provided to the plaintiff.  Def's SMF ¶ 2; Pl.'s SMF Resp. ¶ 2; Pl.'s SMF ¶ 3.  The letter further stated that the CIA "could neither confirm nor deny the existence or nonexistence of any other responsive records," and denied the "request . . . pursuant to FOIA Exemptions (b)(1) and (b)(3)."  Def.'s SMF ¶ 2; Pl.'s SMF Resp. ¶ 2.  In other words, the CIA issued a *Glomar* response.[2]

---

[1]      The complaint alleges that the plaintiff, LOOKS Filmproduktionen GmbH, and its parent company, LOOKS Film & Television GmbH, sent FOIA requests to the CIA, *see* FAC ¶¶ 10, 15, 16, 22, and that the parent company "transferred control" of its requests to the plaintiff, *see id.* ¶ 15.  Since no party disputes that the plaintiff is the appropriate party to bring the claims predicated on some of the parent company's FOIA requests, for simplicity's sake, the Court will refer to both the plaintiff and the parent company as "LOOKS."  *See* Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s SMF") ¶ 3, ECF No. 16-1; Pl.'s Resp. to Def.'s SMF ("Pl.'s SMF Resp.") ¶ 3, ECF No. 30.

[2]      *Glomar* responses are "named for the Hughes Glomar Explorer, a ship used in a classified CIA project 'to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts.'"  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) (quoting *Phillippi v. CIA*, 655 F.2d 1325, 1327 (D.C. Cir. 1981)).  In the 1986 Freedom of Information Reform Act, Congress codified in 5 § 552(c) the use of a *Glomar* response for the following three limited categories of agency records: (1) law enforcement records described in § 552(b)(7)(A), which if disclosed could reasonably be expected to interfere with enforcement proceedings; (2) informant records; and (3) certain classified records maintained by the FBI.  Pub.L. No. 99–570, §§ 1801–04 (1986); *see* 5 U.S.C. § 552(c) (for these excluded categories of records, allowing agencies to "treat the

On December 21, 2012, the plaintiff appealed the CIA's denial of its request and use of a *Glomar* response, Def.'s SMF ¶ 3; Pl.'s SMF Resp. ¶ 3; Pl.'s SMF ¶ 4, which appeal was denied by the CIA's Agency Release Panel ("ARP") on March 27, 2013, Def.'s SMF ¶ 4; Pl.'s SMF Resp. ¶ 4; Pl.'s SMF ¶ 5. Dissatisfied with this result, the plaintiff sought assistance from the Office of Government Information Services ("OGIS"), a "FOIA ombudsman" charged with the task of resolving disputes between FOIA requesters and the government. On December 17, 2013, the OGIS advised the plaintiff that because the CIA does not process reconsideration requests, the plaintiff should "submit a new request, [referencing its] previous request," and "refine this request to focus around a specific historical event, without referring to a specific individual." Def.'s SJ Mot., Ex. E to Decl. Martha M. Lutz (Letter from OGIS to Plaintiff, dated Dec. 17, 2013) at 5, ECF No. 16-4; Def.'s SMF ¶ 5; Pl.'s Resp. SMF ¶ 5.

On February 24, 2014, the plaintiff submitted two new FOIA requests ("2014 FOIA Requests") to the CIA: (1) "for copies of all records about former East German minister of State Security Erich Mielke maintained or created by the Medical and Psychological Analysis Center ("MPAC") or its predecessor Office of Leadership Analysis ("OLA")," Def.'s SJ Mot., Ex. F to Decl. Martha M. Lutz ("2014 FOIA Requests") at 6, ECF No. 16-4; and (2) "for copies of all records about former East German Minister of State Security Erich Mielke," excluding "any records maintained or created by the [MPAC] or its predecessor [OLA]," and noting that the request is a "resubmission—with some minor modifications—" of a previous FOIA request, and that the plaintiff expects this new request to be "treat[ed] . . . as a reconsideration and *not* as a

---

records as not subject to the requirements of this section"); *see also Benavides v. Drug Enf't Agency,* 976 F.2d 751, 752–53 (D.C. Cir. 1992) (per curiam) (construing the phrase "not subject to the requirements of this section" to "permit a Glomarization where the information's status has not been officially confirmed, but to permit analysis under other exemptions like that afforded any other document sought under FOIA, where the status has been so confirmed").

new request," *id.* at 9.  *See also* Def.'s SMF ¶ 6; Pl.'s SMF Resp. ¶ 6; Pl.'s SMF ¶¶ 7, 8.  The

plaintiff expressly instructed the CIA "*not* [] [to] combine these [two] requests, as they have been

filed separately to allow [the CIA] to process and release records in response to the narrower

request . . . while still processing the records responsive to the broader request."  2014 FOIA

Requests at 6 n.1.

Notwithstanding the plaintiff's instructions, on March 14, 2014, the CIA combined the

2014 FOIA requests and issued a *Glomar* response "pursuant to FOIA Exemptions (b)(1) and

(b)(3)" to both, noting that the plaintiff "declined to act on a recommendation proffered by the

[OGIS]," and the "purported modifications show[] no alteration to the scope of records being

sought."  Def.'s SJ Mot., Ex. G to Decl. Martha M. Lutz ("CIA's Glomar Resp. to 2014

Requests") at 1–2 , ECF No. 16-5; Def.'s SMF ¶ 7; Pl.'s Resp. SMF ¶ 7; Pl.'s SMF ¶¶ 9, 10.  On

May 22, 2014, the plaintiff requested that the CIA review the denial "at the appellate level and

reverse the unreasonable position your agency has taken" within twenty business days, while

maintaining the position that all administrative remedies have already been exhausted because

the denial was "in fact a reconsideration of an appellate determination regarding a previous

request."  Def.'s SJ Mot., Ex. H to Decl. Martha M. Lutz ("Pl.'s Appeal of 2014 Denial") at 3,

ECF No. 16-5; Def.'s SMF ¶ 8, Pl.'s SMF Resp. ¶ 8; Pl.'s SMF ¶ 11.  In response, on June 19,

2014, the CIA indicated that it "does not have a reconsideration mechanism" and that the

plaintiff's May 22, 2014 letter would be processed as "an administrative appeal . . . to give [the

plaintiff] maximum consideration."  Def.'s SJ Mot., Ex. I to Decl. Martha M. Lutz at 4, ECF No.

16-5.

Before a final decision on its appeal, the plaintiff filed the instant lawsuit.  Def.'s SMF ¶

11; Pl.'s Resp. SMF ¶ 11; Pl.'s SMF ¶ 12; *see also* Compl., ECF No. 1.  The following month,

on August 8, 2014, the CIA denied the appeal.   Def.'s SJ Mot., Ex. J to Decl. Martha M. Lutz

("CIA's 2014 Appeal Denial") at 5, ECF No. 16-5.   Shortly thereafter, however, on October 1,

2014, the CIA's Information Management Services Office decided to "reverse its initial Glomar

position and accept LOOKS'[s] Feb 22, 2014 FOIA requests."   Def.'s SJ Mot., Ex. K to Decl.

Martha M. Lutz at 6, ECF No. 16-5.   The plaintiff was assured that "[t]he appropriate Agency

Directorates have been tasked to conduct a reasonable full text search for records regarding Erich

Mielke," including, due to the age of the potential documents, conducting "manual searches in

the CIA's Records Archives."   *Id.*   On November 3, 2014, the CIA informed the plaintiff that the

search was completed and had located twenty-seven responsive documents, thirteen "of which

[were] released in segregable form with redactions made on the basis of FOIA exemption[s]

(b)(1) and/or (b)(3)," and fourteen of which were withheld "in their entirety on the basis of FOIA

exemption[s] (b)(1) and/or (b)(3)."   Def.'s SJ Mot., Ex. L to Decl. Martha M. Lutz at 7; Def.'s

SMF ¶ 13; Pl.'s Resp. SMF ¶ 13; Pl.'s SMF ¶ 15.   In addition to the documents, the CIA also

produced a *Vaughn* index. [3]   *See* Def.'s SJ Mot., Ex. M to Decl. Martha M. Lutz ("*Vaughn*

Index"), ECF No. 16-6.

    After nearly five months of "confer[ring] in order to determine whether any of the issues

in contention may be resolved," Def.'s Consent Mot. for Extension of Time to File Its Mot.

Summ. J. at 1, ECF No. 11, and five extensions of time, the CIA filed its motion for summary

judgment on April 2, 2015, *see* Def.'s SJ Mot.   Over a month later, the plaintiff moved for leave

to file the operative First Amended Complaint, which was granted.   *See* Pl.'s Mot. for Leave to

File Am. Compl., ECF No. 23; Minute Order, dated June 19, 2015; FAC.   The CIA subsequently

filed a supplemental motion to dismiss the plaintiff's newly asserted second claim seeking relief

---

[3]      "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n. 1 (D.C. Cir. 2015).

under the FOIA and the APA. *See* Def.'s Mot. Dismiss.  The plaintiff also filed its own cross-motion for partial summary judgment as to a narrow aspect of the FOIA claim and as to the entirety of the FOIA/APA claim. *See* Pl.'s Mot.

After the filing of the plaintiff's opposition and cross-motion, the CIA "re-reviewed all twenty-seven (27) documents responsive to Plaintiff's FOIA request to determine whether any additional information could be released." Def.'s Reply Supp. Summ. J. Mot. and in Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. ("Def.'s Reply"), Decl. of Antoinette B. Shiner ("Shiner Decl.") ¶ 17, ECF No. 42-1.  This re-review, undertaken by the CIA on its own initiative, resulted in the release of (1) three documents in full that were previously released in redacted form, (2) additional information in each of the remaining documents that were previously produced in redacted form, and (3) certain information in three documents that were previously withheld in full. *See generally id.*  All three pending motions are now ripe for resolution.

## II.    LEGAL STANDARD

Congress enacted the FOIA as a means "to open agency action to the light of public scrutiny," *Am. Civil Liberties Union v. U.S. Dep't of Justice,* 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976)), and "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army,* 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *Dep't of Justice v. Julian,* 486 U.S. 1, 8 (1988)).  As the Supreme Court has "consistently recognized[,] . . . the basic objective of the Act is disclosure." *Chrysler Corp. v. Brown,* 441 U.S. 281, 290 (1979).  At the same time, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't*

*of Def.,* 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations omitted). Reflecting that balance, the FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed." *Milner v. U.S. Dep't of Navy,* 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted) (citing *FBI v. Abramson,* 456 U.S. 615, 630 (1982)); *see Murphy v. Exec. Office for U.S. Attys.,* 789 F.3d 204, 206 (D.C. Cir. 2015); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 869 (D.C. Cir. 2010). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose,* 425 U.S. at 361.

The agency invoking an exemption has the burden "to establish that the requested information is exempt." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,* 443 U.S. 340, 352 (1979); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755 (1989); *DiBacco,* 795 F.3d at 195; *CREW,* 746 F.3d at 1088; *Elec. Frontier Found. v. U.S. Dep't of Justice,* 739 F.3d 1, 7 (D.C. Cir. 2014), *cert. denied sub nom. Elec. Frontier Found. v. Dep't of Justice,* 135 S. Ct. 356 (2014); *Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 57 (D.C. Cir. 2003). In order to carry this burden, an agency must submit sufficiently detailed affidavits or declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which the requester's case may be presented to the trial court. *See Oglesby v. U.S. Dep't of Army,* 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("The description and explanation the agency offers should

reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection . . . [which] serves the purpose of providing the requestor with a realistic opportunity to challenge the agency's decision." (citation omitted)); *see also CREW,* 746 F.3d at 1088 ("The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Larson v. U.S. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)). While "an agency's task is not herculean[,]" it must "describe the justifications for nondisclosure with reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption." *Murphy,* 789 F.3d at 209 (internal quotation marks omitted) (citing *Larson,* 565 F.3d at 862).

The FOIA provides federal courts with the power to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), and "directs district courts to determine *de novo* whether non-disclosure was permissible," *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,* 777 F.3d 518, 522 (D.C. Cir. 2015). A district court must review the *Vaughn* index and any supporting declarations "to verify the validity of each claimed exemption." *Summers v. U.S. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C. Cir. 1998). "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.,* 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.,* 455 F.3d 283, 287 (D.C. Cir. 2006)).

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.,* 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011)); *Larson,* 565 F.3d at 862 (quoting *Wolf,* 473 F.3d at 374–75).

A district court also has an "affirmative duty" to consider whether the agency has produced all segregable, non-exempt information. *Elliott v. U.S. Dep't of Agric.,* 596 F.3d 842, 851 (D.C. Cir. 2010) (referring to court's "affirmative duty to consider the segregability issue *sua sponte*") (quoting *Morley v. CIA,* 508 F.3d 1108, 1123 (D.C. Cir. 2007)); *Stolt–Nielsen Transp. Grp. Ltd. v. United States,* 534 F.3d 728, 734 (D.C. Cir. 2008) ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld.") (quoting *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Trans–Pac. Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[W]e believe that the District Court had an affirmative duty to consider the segregability issue *sua sponte* . . . even if the issue has not been specifically raised by the FOIA plaintiff."); *see also* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

## III.   DISCUSSION

As noted, the plaintiff asserts two claims against the CIA. The first claim, brought under the FOIA, challenges the CIA's response to the plaintiff's two 2014 FOIA Requests, including the adequacy of the search and the applicability of the cited exemptions. *See* FAC ¶ 30; Pl.'s Mem. Supp. Cross-Mot. Partial Summ. J. ("Pl.'s Mem.") at 6, 13, ECF No. 31.[4] The second

---

[4]      The plaintiff submitted the identical memorandum in opposition to the defendant's motion for summary judgment and defendant's supplemental motion to dismiss plaintiff's APA/FOIA claim. *See* Pl.'s Mem. of Points

claim alleges that the CIA failed to follow its own regulation, 32 C.F.R. § 1900.13(j), when it combined the plaintiff's two 2014 FOIA requests in order to "allow it to continue to argue that LOOKS['s] request was too broad," in violation of the FOIA and the APA. FAC ¶¶ 38, 41. Each of the plaintiff's claims is addressed separately below.

## A.  First Cause of Action—Challenging CIA's Response to Plaintiff's 2014 FOIA Requests

The CIA seeks summary judgment on the plaintiff's FOIA claim because (1) "the CIA conducted an adequate search of its records systems," Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s SJ Mem.") at 4, ECF No. 16; (2) "the CIA properly applied FOIA exemptions," *id.* at 12; and (3) "all reasonably segregable material has been released to plaintiff," *id.* at 20. The plaintiff disputes each of these assertions and, on cross-motion, seeks partial summary judgment on "all withholdings made pursuant to the CIA Act of 1949 which are not personnel-related." Pl.'s Mot. at 1. For the reasons set out below, the Court is persuaded that the CIA is entitled to summary judgment on the plaintiff's FOIA claim.

### 1.  Adequacy of the CIA's Search

#### a.  *Legal Standard*

Upon receiving a FOIA request, federal agencies are "required to perform more than a perfunctory search" to identify potential responsive records. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Instead, the agency bears the burden of demonstrating that it "made a 'good faith effort to conduct a search using methods which can be reasonably expected to produce the information requested.'" *DiBacco*, 795 F.3d at 188 (internal alterations omitted) (quoting *Oglesby*, 920 F.2d 57, 68 (D.C. Cir. 1990)). To meet this burden,

---

and Auths. in Opp'n to Def.'s Mot. Summ. J. and Def.'s Supp. Mot. Dismiss Pl.'s APA Claim and in Support of Pl.'s Cross-Mot. for Partial Summ. J., ECF No. 30. The Court cites only to the plaintiff's memorandum in support of its cross-motion for summary judgment, which is docketed at ECF No. 31.

the agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  At the summary judgment stage, an agency may meet this burden by submitting a "'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Ancient Coin Collectors Guild*, 641 F.3d at 514 (quoting *Valencia–Lucena*, 180 F.3d at 326).  Such an affidavit must "'explain in reasonable detail the scope and method of the search conducted by the agency.'" *See Morley,* 508 F.3d at 1121 (internal alterations omitted) (quoting *Perry v. Block,* 684 F.2d 121, 127 (D.C. Cir. 1982)).  "Agency affidavits—so long as they are 'relatively detailed and non-conclusory'—are 'accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)); *see also DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015).  Only where "a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,'" should summary judgment be denied. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (quoting *Valencia-Lucena*, 180 F.3d at 326).

  **b.**  *Analysis*

   Here, the CIA initially submitted a declaration from the Information Review Officer ("IRO") in the Litigation Information Review Office, describing the agency components tasked with conducting the searches, the individuals who conducted the searches,\ their qualifications, and the search terms and methods used. *See* Def.'s SJ Mot., Decl. of Martha M. Lutz ("Lutz

Decl."), ECF No. 16-2.  As detailed in the declaration, the CIA's records are maintained in decentralized "components" belonging to one of five Directorates—the Directorate of Operations ("DO"), the Directorate of Analysis ("DA"), the Directorate of Science and Technology ("DS&T"), the Directorate of Support ("DS"), and the Director's Area ("DIR").[5]  Lutz Decl. ¶¶ 6–7.  Upon receipt, a FOIA request is assigned to the CIA's Information Management Services ("IMS") group, where "experienced IMS professionals analyze the request and determine which CIA Directorates reasonably might be expected to possess responsive records."  *Id.* ¶ 6.

In this case, IMS first forwarded the plaintiff's request for all records "about . . . Erich Mielke" to the DA, DO and DIR, "the only Directorates reasonably likely to have records responsive to the request" regarding a foreign national.  *Id.* ¶ 30.  The DA "is the CIA Directorate that analyzes, interprets, and forecasts foreign intelligence issues and world events of importance to the United States," and is "responsible for the production of finished intelligence reports for dissemination to policymakers in the U.S. Government."  *Id.* ¶ 9.  The DO is "the organization within the CIA responsible for the clandestine collection of foreign intelligence from human sources"; specifically, the DO contains "information on persons who are of foreign intelligence or counterintelligence interest to the CIA and other U.S. Government agencies."  *Id.* ¶ 8.  The DIR "is a cluster of offices directly responsible to the Director of the CIA—such as the Office of General Counsel ("OGC"), the Office of Inspector General, the Office of Congressional Affairs, and CIO."  *Id.* ¶ 12.  DS&T and DS were not tasked "because there was no reasonable expectation that a search of these Directorates would locate information [about] a

---

[5]  On October 1, 2015, "the names of several of the Directorates changed, though their underlying functions and responsibilities remain the same." Def.'s Reply Supp. Summ. J. Mot. and in Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. ("Def.'s Reply"), Decl. of Antoinette B. Shiner ("Shiner Decl.") ¶ 10 n.2, ECF No. 42-1. The directorate previously known as the "National Clandestine Service" was renamed the "Directorate of Operations;" the directorate previously known as the "Directorate of Intelligence" was renamed the "Directorate of Analysis." *Id.* For clarity, the Court will use only the new names of these two directorates.

minister with a foreign government."[6]  *Id.* ¶ 30.  DA, DO and DIR were tasked to conduct "a 'full-text' keyword search of their respective non-exempt [electronic and hard copy] records repositories using 'Eric,' 'Mielke' and 'state security' as search parameters."  *Id.* ¶¶ 30–31.  Files maintained by the DO that are subject to the "'operational file exemption' or 'ops file exemption,'" under the National Security Act of 1947 ("NSA"), 50 U.S.C. § 3141, were not searched.  *Id.* ¶ 8.  In sifting through potentially responsive records, the CIA excluded documents that "incidentally mention[] Erich Mielke, or are merely directories/reference aids listing various leaders within foreign governments," based on the understanding that these documents are not "about . . . Erich Mielke," as requested by the plaintiff.  *Id.* ¶ 34.

According to the CIA, this declaration "establishes that the CIA has made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, and has conducted a search of all locations that are likely to yield documents responsive to Plaintiff's FOIA requests."  Def.'s SJ Mem. at 9–10 (citing *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973))).  The plaintiff counters that the CIA has not met its burden of establishing that an adequate and reasonable search was conducted for responsive materials, because the CIA (1) "provided no information about its searches of the [DA, DO,] and the Director's Area ("DIR") beyond the conclusory assertion that the 'searches were thorough and reasonably calculated to uncover any relevant material'"; (2) "did not search for records including the term 'Stasi,' despite clearly knowing that

---

[6]      "The DS&T is the CIA Directorate responsible for creating and applying technology to fulfill intelligence requirements."  Lutz Decl. ¶ 10.  "The DS provides the CIA with mission-critical services—such as providing facilities, logistics, training, financial management, medical services, and human resources—and addresses security matters generally, including the protection of CIA personnel and facilities."  *Id.* ¶ 11.

that was the name by which the Ministry of State Security was best known;" (3) "adopted a very narrow reading of LOOKS' requests"; and (4) "wrongly refused to search entire systems of records under the theory that they were categorically exempt as 'operational files.'" Pl.'s Mem. at 6 (quoting Lutz Decl. ¶ 31). These four arguments are addressed *seriatim* below.

### i.     *The Adequacy of the Declaration Regarding the Repositories Searched*

The plaintiff contends that insufficient information has been provided to conclude that the search was adequate because the CIA failed to "indicate *which* 'records repositories' were searched within [each] Directorates, let alone which offices," an "omission" the plaintiff describes as "significant" given the CIA's "ubiquitous testimony regarding how 'decentralized and compartmented' its records systems are." Pl.'s Mem. at 7. The CIA responded to this criticism, in the second IRO declaration, clarifying that "experienced subject matter experts in the DA, DO and DIR Area conducted thorough searches of their respective directorates' records systems," including "the biography archive of the Office of Leadership Analysis, all non-exempt electronic systems of records maintained by the DO and DA, and the hard copy archives of records from the Agency's Archive and Records Center." Shiner Decl. ¶¶ 11–12.

Notwithstanding the CIA's clarification, the plaintiff characterizes the CIA's actions as "obstructionist," since the "CIA refuses to identify *any* specific offices which were searched, except to begrudgingly admit that the search included 'the biography archive of the Office of Leadership Analysis,'" and does not identify which "enterprise functions" within the DIR Area were searched. Pl.'s Combined Sur-Reply in Opp'n to Def.'s Mot. Summ. J. and Reply Mem. in Supp. of Pl.'s Cross-Motion for Partial Summary Judgment ("Pl.'s Sur-reply") at 4 (quoting

Shiner Decl. ¶ 12), ECF No. 47.[7]  Strong language aside, the plaintiff cites no case law to support the proposition that the CIA is required to disclose the specific offices searched or other search methodologies with such granularity.  *See id.*

Indeed, the D.C. Circuit recently accepted as sufficient a similar CIA declaration, which like the second IRO declaration, described only the agency Directorates tasked to conduct searches, without requiring disclosure of the specific offices within each Directorate subject to search.  *See DiBacco*, 795 F.3d at 194–95.  In that case, the Circuit found satisfactory a declaration stating only that "[a]ll [Directorates] were tasked . . . , including any subcomponents, which might reasonably possess responsive records[,] includ[ing] the National Clandestine Service (formerly the Directorate of Operations) and the Directorate of Intelligence."  Def.'s Reply Supp. Mot. Summ. J., Ex. D (Second Decl. of Martha M. Lutz) ¶¶ 6–7, *DiBacco v. U.S. Army*, 983 F. Supp. 2d 44 (D.D.C. 2013), *aff'd in part, remanded in part*, *DiBacco*, 795 F.3d 178, ECF No. 246-4.  The second IRO declaration at issue here provides even more information than the declaration considered in *DiBacco*.  Here, the CIA specifically stated that "the biography archive of the Office of Leadership Analysis," and "all non-exempt electronic systems of records maintained by the DO and DA, and the hard copy archives of records from the Agency's Archive and Records Center," were searched.  Shiner Decl. ¶ 12.[8]  Thus, the Court finds that the CIA's declarations adequately detail the records repositories searched.

---

[7]  The CIA consented to the plaintiff's filing of the sur-reply, which is identical to its reply in support of its own cross-motion for partial summary judgment. Pl.'s Sur-reply at 1 n.1; *see also* Pl.'s Reply Supp. Cross-Motion, ECF No. 46.

[8]  The plaintiff also challenges the integrity of the agency's declarations, asserting that the CIA must have searched only "*some* Directorate subcomponents but not others" because it would be "far-fetched" to believe "that less than thirty records existed in *the entire CIA* about the former head of the East German secret police." Pl.'s Sur-reply at 5 (emphasis in original). The D.C. Circuit has, however, expressly rejected precisely this type of reasoned speculation intended to undermine the good faith presumption accorded an agency's sworn declarations. *See Mobley*, 806 F.3d at 581 (D.C. Cir. 2015) ("Agency affidavits — so long as they are 'relatively detailed and non-conclusory' — are 'accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (quoting *Safecard Servs.*, 926 F.2d at 1200));

15

### ii.    *The Adequacy of the Search Terms*

The plaintiff challenges the adequacy of the CIA's search terms because, although the CIA searched record repositories using "at least the following search terms, as well as variations and combination of those search terms: "Erich Mielke," "Mielke," "state security," "Erich, "MPAC," "medical and psychological," Shiner Decl. ¶ 13, the CIA did not use the search term "Stasi," an abbreviation of the German name for the Ministry of State Security, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. and Def.'s Suppl. Mot. Dismiss Pl.'s APA Claim and Supp. Pl.'s Cross-Mot. Partial Summ. J. ("Pl.'s Opp'n") at 8, ECF No. 30. According to the plaintiff, the term "Stasi" is so important that "[a]ny search which did not include 'Stasi' as a search term would therefore miss a large number of responsive records." *Id.* Additionally, the plaintiff suggests that the "CIA should choose other terms, such as 'Director,' 'Minister, 'State Secretary,' and the like (including their German equivalents), to use in conjunction with 'Stasi.'" *Id.* at 8 n.3.

The plaintiff's argument is unavailing for at least three reasons. First, the plaintiff's suggested additional search terms, *e.g.*, "Stasi," "Director,'" "Minister," "State Secretary," and "the like (including their German equivalents)," are, on their face, extremely broad and would likely produce a greater number of unresponsive documents than the more targeted search terms employed by the agency. In fulfilling the statutory mandate of the FOIA, federal agencies properly use search terms that are designed to return responsive documents as a means of targeting their resources in the most efficient manner.

---

*DiBacco*, 795 F.3d at 191 ("Absent a more substantial showing, the Army's 'failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records.'" (quoting *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam)); *Marcusse v. U.S. Dep't of Justice Office of Info. & Privacy*, Nos. 14-5073, 14-5099, 14-5100, 2015 WL1606930, at * (D.C. Cir. Mar. 24, 2015).

Second, the second IRO declaration makes plain that the enumerated search terms—
"Erich Mielke," "Mielke," "state security," "Erich, "MPAC," "medical and psychological"—
covers only the basic search terms used by all Directorates but that these terms reflect a non-
exhaustive list of actual search terms used. Shiner Decl. ¶ 13. The declaration emphasized that
"each search was conducted by the professionals with the most subject matter expertise within
each Directorate, and each Directorate had the latitude to search any additional terms it deemed
most likely to return responsive documents." *Id.* ¶ 14. Therefore, the search terms suggested by
the plaintiff could and may have been used, if the subject-matter experts thought that these
suggested search terms would yield responsive documents.

Finally, an agency is only required to satisfy its "burden [] to show that its search efforts
were reasonable and logically organized to uncover relevant documents; it need not knock down
every search design advanced by every requester." *DiBacco*, 795 F.3d at 191 (citing *SafeCard
Servs.*, 926 F.2d at 1201). Here, the CIA has adequately demonstrated that its search efforts
were reasonable to uncover relevant documents: it tasked three relevant Directorates to conduct
full-text key word searches "using *at least*" the enumerated search terms, as well as any
additional search terms deemed likely to yield responsive documents by subject matter experts
within each Directorate. The enumerated search terms on their face appear reasonably calculated
to discover documents "about . . . Erich Mielke," 2014 FOIA Requests at 6, who was the
Director of the Easter German Ministry of State Security. *See* Shiner Decl. ¶¶ 13, 14. Whether
"Stasi" was used as a search term does not raise substantial doubt as to the reasonableness of the
CIA's efforts, particularly where "Stasi" is merely the abbreviation of the German word
Staatssicherheit, which translates to state security, a search term that was used by the CIA. *See
DiBacco*, 795 F.3d at 191 (rejecting the plaintiff's argument that the defendant's search was

unreasonable because it did not use the search term "'GO,' an abbreviation for the 'Gehlen Organization,' and 'PO Box 1142,' a code name for Fort Hunt," when "it is undisputed that the agencies searched for records pertaining to the Gehlen Organization and employed relevant codenames"); *Ahanmisi v. U.S. Dep't of Labor*, 859 F. Supp. 2d 7, 11–12 (D.D.C. 2012) (rejecting the plaintiff's argument that the defendant's search was inadequate because a specific search term was not used "in light of the unique, identifying terms already used").[9]  In sum, the Court concludes that the CIA used adequate search terms, contrary to the plaintiff's claim.

### iii.    The Appropriate Scope of the Plaintiff's Requests

The plaintiff also challenges the CIA's interpretation of the scope of the plaintiff's two FOIA requests, which asked for: (1) "all records about former East German Minister of State Security Erich Mielke maintained or created by the Medical and Psychological Analysis Center ('MPAC') or its predecessor Office of Leadership Analysis ('OLA')," 2014 FOIA Requests at 6; and (2) "all records about former East German Minister of State Security Erich Mielke," *id*. at 9. *See* Pl.'s Opp'n at 9.  In the CIA's view, documents that merely "incidentally mention[ed] Erich Mielke, or are merely directories/references aids listing various leaders within foreign governments" were not responsive to a FOIA request "about . . . Erich Mielke," because "there was no substantive information concerning 'Erich Mielke.'"  Lutz Decl. ¶ 34.  The plaintiff

---

[9]      The plaintiff's attempt, in its sur-reply, to characterize the CIA's IRO declarations as providing "very little . . . about the terms used for the search, stating only that 'each Directorate had the latitude to search any additional terms it deemed most likely to return responsive documents,'" is unpersuasive. Pl.'s Sur-reply at 4 (quoting Shiner Decl. ¶ 14).  The CIA has identified the requisite search terms used to conduct the searches and stated, in addition, that "each search was conducted by the professionals with the most subject matter expertise within each Directorate, and each Directorate had the latitude to search any additional terms it deemed most likely to return responsive documents." Shiner Decl. ¶ 14.  This is sufficient for the purpose of this summary judgment motion.  For example, the CIA declaration approved by the D.C. Circuit in *DiBacco* contained similar language.  In addition to listing a number of search terms that were used, the declaration added that "as necessary, the CIA conducted additional searches throughout the life of the project based on leads from the material under review and in response to specific requests and leads from Interagency Working Group staff, including IWG historians." Def.'s Mot. Summ. J., Ex. E (Decl. of Martha M. Lutz) ¶ 16, *DiBacco v. U.S. Army*, 983 F. Supp. 2d 44 (D.D.C. 2013), *aff'd in part, remanded in part*, *DiBacco*, 795 F.3d 178 (D.C. Cir. 2015), ECF No. 240-5.

argues that this interpretation is "overly narrow," calling into question whether other responsive documents were withheld due to this misreading. Pl.'s Opp'n at 9. This argument is without support from either case law or the plain text of the FOIA requests at issue.

The plaintiff is correct that "an agency 'has a duty to construe a FOIA request liberally,' and is 'bound to read it as drafted' not as 'agency officials . . . might wish it was drafted.'" Pl.'s Opp'n at 9 (quoting *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 156 (D.D.C. 2013) (internal citations omitted) (quoting *Nation Magazine*, 71 F.3d at 890; *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). Even a "liberal" reading of the plaintiff's FOIA requests, however, does not support the plaintiff's assertion that its request for records "'about Erich Mielke' . . . should have put CIA on notice that all records containing references to Mielke would be considered responsive." *Id.* The Oxford English Dictionary defines "about" as, *inter alia*, "touching, concerning, in matter of, in reference or regard to," and requires more than merely an appearance of the word or topic. OXFORD ENGLISH DICTIONARY 39 (2d ed. 1989). In other words, documents "about" a certain subject must have information regarding that subject, rather than just a mention of the word. Thus, contrary to the plaintiff's contention, the Court finds that the CIA's construction of the plaintiff's FOIA requests was reasonable.

### iv.   *The Exemption of Operational Files*

Lastly, the plaintiff challenges the adequacy of the CIA's search because the declarations are insufficient to show that the operational files exemption under the National Security Act of 1947 applies. The plaintiff posits that while "the CIA Director can exempt operational files from the search provision of FOIA, . . . [i]n order to avail itself of the operational files search exception, [the] agency must first demonstrate that files are properly designated as 'operational files,'" a showing the plaintiff claims the CIA failed to do in either of its declarations. Pl.'s

19

Opp'n at 10.  This argument is belied by the plain language of the statute and the relevant case law.

The National Security Act of 1947, 50 U.S.C. § 3141, provides that "[t]he Director of the Central Intelligence Agency, with the coordination of the Director of National Intelligence, may exempt operational files of the Central Intelligence Agency from the provisions of section 552 of Title 5 (Freedom of Information Act) which require publication or disclosure, or search or review in connection therewith."  50 U.S.C. § 3141(a). The term "operational files" is statutorily defined to mean three separate categories of files maintained by the CIA, including, as pertinent here, "files of the National Clandestine Service [now renamed the Directorate of Operations] which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services."  *Id.* § 3141(b)(1).

The statute "does not grant the CIA an automatic exemption of its operational files from the records it must search in response to a FOIA demand," however. *Am. Civil Liberties Union v. Dep't of Def.*, 351 F. Supp. 2d 265, 271–72 (S.D.N.Y. 2005).  Instead, the Director of the CIA must "explicitly [] claim an exemption with respect to specifically categorized files in order for the Agency to take advantage of the protections afforded." *Id.*  In 1995, the Director of the CIA claimed just such a FOIA exemption, under the former CIA Information Act, with respect to DO operational files.  *See Davy v. CIA*, 357 F. Supp. 2d 76, 82 (D.D.C. 2004); *see also Morley*, 508 F.3d at 1116 ("Operational files *are* exempt from FOIA disclosure under the CIA Act, 50 U.S.C. § 431(a), and generally include records 'which document the conduct of foreign intelligence or counterintelligence operations.'" (emphasis added)).

Acknowledging the tension between the public's interest in disclosure and the CIA's need to protect the secrecy of highly sensitive operational information, Congress, in enacting the National Security Act, sought to ensure, with the safeguard of judicial review, that "the process by which the Director identifies and exempts operational files will involve a well-documented, detailed justification for the exemption of files selected for exemption." H.R. Rep. No. 98-726, pt. 1, at 20 (House report explaining Section 3141(a)). Therefore, the statute provides that "when a complainant alleges that requested records were improperly withheld because of improper exemption of operational files, the Central Intelligence Agency shall meet its burden under section 552(a)(4)(B) of Title 5 by demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth in subsection (b) of this section." 50 U.S.C. § 3141(f)(4)(A).

The statute and the relevant case law makes clear that for the CIA to be initially afforded the protection of the operational files exemption with respect to the DO operational files, "which document the conduct of foreign intelligence or counterintelligence operations," the Director need only claim the exemption, as occurred in 1995. *Id.* § 3141(b)(1). The CIA must meet a higher burden only "when a complainant alleges that requested records were improperly withheld because of improper exemption of operational files." *Id.* § 3141(f)(4)(A). In other words, contrary to the plaintiff's position, the CIA need not "first demonstrate that the files are properly designated as 'operational files,'" every time it seeks to obtain the protection of that exemption." Pl.'s Opp'n at 10. Indeed, courts have routinely considered searches to be adequate that excluded exempt operational files, without further explanation of whether the files were properly designated as operational files. *See, e.g., Hall v. CIA*, 668 F. Supp. 2d 172, 184–85 (D.D.C. 2009) (accepting the CIA's declaration as sufficient and its search as adequate where the

declaration simply stated that the DO "did not conduct an additional search" because it "determined that any responsive records it had would be contained in properly designated operational files, which are exempt from the search, review, and release provisions of the FOIA" (quoting Def.'s Mot. Dismiss & Partial Summ. J., Ex. 1 (Aff. of Scott A. Koch), *Hall v. CIA*, 668 F. 2d 172 (D.D.C. 2009), ECF No. 54-1)); *Bothwell v. Brennan*, No. 13-cv-05439-JSC, 2015 WL 6689387, at *7 (N.D. Cal. June 4, 2015) (holding "the CIA has [] met its burden of showing that a CIA director has exempted operational files from FOIA disclosure as permitted by law" based on the finding that the Director had exempted operational files, citing *Morley*, 508 F.3d at 1116, *Davy*, 357 F. Supp. 2d at 82, and the CIA's declaration averring "that CIA operational files are exempt").

The plaintiff relies on *Inst. for Policy Studies v. CIA*, 124 F. Supp. 3d 1, 3–4 (D.D.C. 2015), *on reconsideration*, 153 F. Supp. 3d 352 (D.D.C. 2016), for the proposition that before claiming the operational files exemption, the CIA must "first demonstrate that the files are properly designated as 'operational files.'" Pl.'s Opp'n at 10–11. The plaintiff's reliance on this case is misplaced. The plaintiff in *Inst. for Policy Studies* made the requisite allegation that "the CIA has improperly withheld requested records due to improper exemption of operational files," triggering the CIA's obligation to "'demonstrate[] to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth in subsection (b) of this section.'" *Inst. for Policy Studies*, 124 F. Supp. at 2–3 (quoting 50 U.S.C. § 3141(f)(4)(A)). That allegation is wholly missing in this case. In fact, the plaintiff expressly declined to make that allegation, "reserv[ing] the right to argue specifically that those systems are not properly designated" "[o]nce CIA provides more information about the alleged

operational files it refused to search," noting that "[i]t would be premature at this point to attempt to do so." Pl.'s Opp'n at 13–14 n.6.

Accordingly, the Court concludes that the CIA submitted satisfactory declarations detailing the adequacy of its search.

### 2.   The CIA Properly Applied FOIA Exemptions

Next, the plaintiff challenges the CIA's withholding of certain documents, either in full or in part, under FOIA Exemptions 1 and 3, and seeks partial summary judgment on information withheld pursuant to the CIA Act, as applied through Exemption 3, that "are not personnel-related." Pl.'s Mot. at 1.[10] To meet its burden of establishing that the requested information was properly withheld under the asserted exemption, *Elec. Frontier Found.,* 739 F.3d at 7, the CIA must show that the proffered justification for invoking the relevant FOIA exemption is "'logical' or 'plausible,'" *Judicial Watch*, 715 F.3d at 941. Thus, the scope of each statutory exemption is reviewed before turning to the question of whether invocation of the exemptions 1 and 3 are logical or plausible.

### a.   *Scope of Exemption 1*

Under FOIA Exemption 1, records that were "[s]pecifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] are in fact properly classified pursuant to such Executive order" may be withheld from disclosure. 5 U.S.C. § 552(b)(1). Thus, to withhold information under Exemption 1, the CIA must show that the information has been classified in compliance with the classification

---

[10]      As already noted, the CIA located a total of twenty-seven responsive documents, Def.'s SMF ¶ 13, of which three documents were produced in full, thirteen were released with redactions, and eleven documents were withheld in full. *Cf. Vaughn* Index (indicating no documents initially released in full) *with* Shiner Decl. ¶ 17 (updating agency response that, upon re-review, three previously redacted documents were released in full and three previously withheld in full documents were released with redactions).

procedures set forth in the applicable executive order and that only information conforming to the executive order's substantive criteria for classification has been withheld. *See ACLU v. U.S. Dep't of Justice*, 640 F. App'x 9, 10–11 (D.C. Cir. 2016); *Judicial Watch*, 715 F.3d at 941 (discussing "substantive and procedural criteria for classification"); *Lesar v. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980) ("To be classified properly, a document must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms."). "'[S]ubstantial weight [is accorded] to an agency's affidavit concerning the details of the classified status of . . . disputed record[s]'" "'[b]ecause courts lack the expertise necessary to second-guess . . . agency opinions in the typical national security FOIA case.'" *ACLU*, 640 F. App'x at 11 (quoting *ACLU*, 628 F.3d at 619) (internal quotation marks and citations omitted; third and fourth alterations in original).

Here, the CIA asserts that information withheld under Exemption 1 is classified under section 1.4(c) and 1.4(d) of Executive Order ("E.O.") 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), as pertaining either to "'intelligence activities (including covert action), intelligence sources or methods, or cryptology,'" Lutz Decl. ¶ 40 (E.O. No. 13,526 § 1.4(c)), or to "'foreign relations or foreign activities of the United States, including confidential sources,'" *id.* (quoting E.O. No. 13,526 § 1.4 (d)). The Executive Order provides, however, that "all classified records that . . . are more than 25 years old . . . shall be automatically declassified whether or not the records have been reviewed," unless an exception applies. E.O. 13,526 § 3.3.

### b.    Scope of Exemption 3

FOIA Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . if that statute" either (1) "requires that the matters to be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for

withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The D.C. Circuit has explained that "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired Rail Road Workers v. U.S. Rail Road Retirement Board*, 830 F.2d 331, 336 (D.C. Cir. 1987)). Here, the CIA invokes the coverage of Exemption 3 pursuant to two statutes authorizing the withholding of information: (1) the National Security Act of 1947, 50 U.S.C. § 102A(i)(l), as amended, 50 U.S.C. § 3024(l); and (2) the CIA Act of 1949, 50 U.S.C. § 403(g). Def.'s SJ Mem. at 17.

The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). As interpreted by the D.C. Circuit, this language exempts from disclosure under FOIA, material that the agency "demonstrates . . . 'can reasonably be expected to lead to unauthorized disclosure'" of intelligence methods or sources. *Wolf*, 473 F.3d at 377 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *see also Larson*, 565 F.3d at 863 (allowing for withholding of information that "could provide enough clues to allow some individuals to determine who provided the information to the CIA"). In light of the national security interests implicated by such material, courts give "even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act." *Wolf*, 473 F.3d at 377 (citing *CIA v. Sims*, 471 U.S. 159, 168–69 (1985)).

The CIA Act provides that the CIA "shall be exempted from the . . . provisions of any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by" the agency. 50 U.S.C. § 3507. In

other words, the CIA Act exempts from disclosure under the FOIA only material that would tend to reveal the identity of CIA personnel. *See Sack v. CIA*, 53 F. Supp. 3d 154, 169–170 (D.D.C. 2014); *Whitaker v. CIA*, 64 F. Supp. 3d 55, 62 (D.D.C. 2014); *Nat. Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 174, 180 (D.D.C. 2013).

### c.    Analysis

The CIA has asserted Exemption 1 to withhold information in thirteen redacted documents but only in places where Exemption 3 has also been asserted. *See generally* Def.'s Reply, Exs. 1–16, ECF Nos. 42-2–17. Since, as discussed below, the Court concludes that the CIA properly relies on Exemption 3, consideration of Exemption 1 is unnecessary.[11]

### i.    Exemption 3—The National Security Act

The CIA avers that information withheld pursuant to Exemption 3 is comprised of intelligence sources—specifically, covert CIA field installations, code words, foreign intelligence relationships, and dissemination-control information. Lutz Decl. ¶¶ 50–62. Indeed, at first blush, the responsive documents, all found within the record repositories maintained by the DA and the DO—the directorates directly in charge of "clandestine collection of foreign intelligence from human sources" and analysis of "foreign intelligence issues"—appear to be precisely the types of documents that would logically contain exempted information related to intelligence sources and methods, as described by the CIA.

---

[11]    The CIA has also withheld eleven documents in full under both Exemptions 1 and 3, but the declaration's description of the information withheld under Exemption 1 makes clear that the information would likewise be withheld under Exemption 3. *Compare* Shiner Decl. ¶ 26 (averring that information withheld under Exemption 1 "pertains to information that would tend to reveal the identities of sources and/or CIA employees; specific CIA intelligence methods still in use, including cover mechanisms; information regarding foreign liaison relationships; and cities and countries in which CIA maintained covert CIA installations.") *with id.* ¶ 28 (averring that information withheld under the National Security Act "would reveal intelligence sources or methods and their application") and *id.* ¶ 31 (averring that information withheld under the CIA Act includes "the names of CIA employees . . . information regarding covert CIA installations; including names and locations of these covert installations").

Nonetheless, the plaintiff challenges whether the exemption has been properly invoked, arguing that (1) the "CIA has not shown all withheld information pertains to intelligence sources and methods," Pl.'s Opp'n at 15, and (2) the classification and dissemination-control markings should not be redacted because they do not "implicate source identities, intelligence methods, or CIA employees," Pl.'s Opp'n at 16; Pl.'s Sur-reply at 7.[12]  Neither of the plaintiff's arguments is persuasive.

The plaintiff's first argument appears to stem from a narrow reading of the CIA's first IRO declaration, nitpicking the language rather than pointing to any apparent gaps that would undermine the asserted justification for invoking Exemption 3 as "'logical' or 'plausible.'" *Judicial Watch, Inc.,* 715 F.3d at 941.  For example, the plaintiff argues that while "describ[ing] what human sources are, how CIA uses them, and what would happen if their identities were revealed," the CIA's declaration "does *not* say, however, [] that any of the withheld information in these particular documents actually pertains to human sources." Pl.'s Opp'n at 16.  This narrow reading of the CIA's declaration ignores the context within which "human sources" are described.  The declaration starts by stating that the "redacted information would reveal specific intelligence . . . sources," Lutz. Decl. ¶ 50, which paragraph is followed by a section entitled "human sources" and another section entitled "foreign liaison and government information," *see id.* ¶¶ 51–55.  While the declaration does not say the magic words called for by the plaintiff, the structure and text of these paragraphs in the declaration makes plain that redacted information includes materials that could reveal the identities of the described "human sources."

---

[12]      The plaintiff also challenges whether the CIA's declaration "support[s] a reasonable inference that" "large blocks of information are redacted in four documents" to withhold information that would reveal "'either the identities of CIA employees or the identities of various sources.'" Pl.'s Sur-reply at 7 (quoting Shiner Decl. ¶ 17(g)).  This argument is more germane to the segregability issue and will be discussed in that context, in Part III.A.3 *infra.*

In any event, the CIA expressly avers, in its second IRO declaration, that certain withheld information "would tend to reveal the identities of sources and/or CIA employees," Shiner Decl. ¶ 26, and for each of the documents released in redacted form, the CIA specifies instances where information was withheld that would otherwise reveal "source identities," *see id.* ¶ 17(b), (c), (d), (e), (f), (g), (h), (i), (j), (k), (o), (p).

The plaintiff further criticizes the CIA's declaration for the sufficiency of the description of types of "intelligence methods" that were withheld. Conceding that this "intelligence methods" discussion was divided into four-sections—Field Installation, Code Words, Foreign Intelligence Relationships, and Dissemination-Control Information—the plaintiff nonetheless claims that the CIA failed to account "for all the types of information it has lumped under [the] label" intelligence methods because the first IRO "does not claim that all of the purported 'intelligence methods' information falls into these four categories." Pl.'s Opp'n at 16. This criticism of the declaration as being insufficiently granular or informative is not persuasive. By breaking down "intelligence methods" into these four specific sections, the CIA fairly communicated that the intelligence methods information withheld in these particular documents belong to one of these four categories.

The plaintiff's second argument challenging the redaction of classification and dissemination-control markings likewise falls flat. The plaintiff attempts to chip away the substantial weight accorded to agencies in the context of national security concerns by casting doubt on whether "classification markings and administrative and routing information" may be considered an "intelligence method." Pl.'s Opp'n at 16–17; Pl.'s Sur-reply at 7. Yet, contrary to the plaintiff's assertion that "a classification marking does not implicate source identities, intelligence methods, or CIA employees," Pl.'s Sur-reply at 7, other Judges on this Court have

found that such classification markings and dissemination control markings on a specific document, which is disclosed in part, could plausibly contain information that may reveal intelligence collection sources or methods protected by the National Security Act, particularly in light of "the weight of authority counseling deference to CIA in matters involving national security." *Larson v. Dep't of State*, No. 02-1937, 2005 WL 3276303, at *11 (D.D.C. Aug. 10, 2005), *aff'd*, 565 F.3d 857 (D.C. Cir. 2009); *see also Shaw v. U.S. Dep't of State*, 559 F. Supp. 1053, 1066 (D.D.C. 1983) (holding the defendant properly redacted classification markings on the basis of the National Security Act); *Hoch v. CIA*, 593 F. Supp. 675, 687–88 (D.D.C. 1984) (holding the CIA properly withheld "file numbers and routing instructions" under the National Security Act). These courts reasoned that classification and dissemination control markings, when placed in the context of substantive information, may "'reveal or highlight areas [of] particular intelligence interest, sensitive collection sources or methods, or foreign sensitivities.'" *Larson*, 2005 WL 3276303 at *10 (quoting McNair Decl. ¶ 53). The Court finds this reasoning persuasive here.

### ii.    *Exemption 3—CIA Act*

The CIA, in its first IRO declaration, invokes the CIA Act to withhold from release "details about its core functions, including, but not limited to, the function of protecting intelligence sources and methods," as well as "the names, offices, and contact information of Agency personnel mentioned in these records." Lutz Decl. ¶ 67. In opposition, the plaintiff rightly challenged the assertion of the CIA Act to withhold information pertaining to "functions of the CIA," and moved for summary judgment as to "all withholdings made pursuant to the CIA Act of 1949 which are not personnel-related." Pl.'s Cross-Mot. Partial Summ. J. at 1, ECF No. 31; Pl.'s Opp'n at 18. In response, the CIA, upon re-review of the records, withheld material, in

six documents, under the CIA Act that would clearly reveal the identity of CIA employees or offices. *See* Def.'s Reply, Ex. 2 (redacting the words following "[t]his memorandum was prepared by" and "[c]omments and queries . . . may be directed to the Chief, East European Division, EURA, on"), ECF No. 42-3; *id.*, Ex. 3 (redacting what appears to be the office from which the record emanated), ECF No. 42-4; *id.*, Ex. 7 (redacting the name of the employee who reviewed the classification determination), ECF No. 42-8; *id.*, Ex. 8 (redacting the name of the employee who made the original classification determination), ECF No. 42-9; *id.*, Ex. 9 (redacting the name of the author of the record), ECF No. 42-10; *id.*, Ex. 14 (redacting from a document titled "staff notes" what the second IRO declaration avers to be information that would tend to identify CIA employees), ECF No. 42-15; *see also* Shiner Decl. ¶ 17(g), (h), (n).

Notwithstanding the CIA's revised production, the plaintiff continues to argue, in sur-reply that "the CIA still maintains that the CIA Act allows it to withhold . . . clandestine intelligence activities." Pl.'s Sur-reply at 8 (quoting Def.'s SJ Mem. at 19). The Court, however, credits the CIA for its re-review of withheld documents and, based upon the detailed explanations for its withholdings set out in the second declaration, concludes that the CIA Act was properly invoked to withhold only personnel information.

Accordingly, Exemption 3 was properly invoked by the CIA to withhold information that would reveal intelligence sources and methods as well as protected personnel information.

### 3.    All Reasonably Segregable Information Has Been Released

Finally, the Court must consider whether the CIA has released reasonably segregable portions of responsive documents. "The FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Morley*, 508 F.3d at 1123 (citing 5 U.S.C. § 522(b)).  An agency may

satisfy its segregability obligations by (1) providing a *Vaughn* Index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material. *See Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the Vaughn index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Office for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002) (upholding agency's segregation efforts based on "comprehensive *Vaughn* index" and "the affidavits of [agency officials]").

The CIA has satisfied its segregability obligations here. The *Vaughn* Index submitted by the CIA, in conjunction with the two successive IRO declarations, comprehensively describe the documents, the information withheld and the reasons for the exemptions, and the CIA avers that "no additional segregable, non-exempt information [] can be released" after a "page-by-page, line-by-line review of the 27 documents responsive to Plaintiff's request." Shiner Decl. ¶ 33. The CIA's declaration is further bolstered by the fact that, on its own accord, the CIA took the initiative to re-review all of the responsive documents and released additional information, including releasing in full three documents, which had been previously released in redacted form. *Id.* ¶ 17. A perusal of the documents released in redacted form reveal that only limited text has been redacted in these documents.

Nevertheless, the plaintiff challenges the reasonableness of the CIA's segregability efforts, pointing out that "large blocks of information are redacted in four documents" and arguing that the declaration does not "support a reasonable inference that" these redactions would reveal "'either the identities of CIA employees or the identities of various sources.'" Pl.'s Sur-reply at 7 (quoting Shiner Decl. ¶ 17(g)). Yet, "'[s]ummary judgment is warranted on the

basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *ACLU*, 640 F. App'x at 10 (quoting *Larson*, 565 F.3d at 862). The CIA here has adequately described the type of information withheld—information that would reveal the identities of sources and CIA employees—and it is not only reasonable but plausible that these four documents, all analytical documents summarizing gathered intelligence regarding East Germany and Erich Mielke, would contain text describing how this foreign intelligence was gathered and by whom—information that clearly falls within the protection of the National Security Act. The plaintiff's speculation that such text should not amount to "large blocks of text" is wholly insufficient to defeat the good faith presumption that otherwise cloaks the agency's declaration.

For the same reason, the plaintiff's request for *in camera* review is denied. Pl.'s Sur-reply at 8. While district courts generally enjoy broad discretion to conduct *in camera* review in FOIA proceedings, the D.C. Circuit has cautioned that such review is "neither necessary nor appropriate" where an agency's affidavits "standing alone were sufficiently specific to place the challenged documents within the exemption categories, and the plaintiffs [do] not contest the contents of the withholdings or present any evidence contradicting the affidavits or suggesting bad faith." *Larson*, 565 F.3d at 870 (internal citations and quotations omitted); *see also ACLU*, 640 F. App'x at 12 ("find[ing] it unnecessary to review the documents to determine whether the information has been properly withheld" under Exemption 1 given the sufficiency of the agency declaration). Moreover, where an agency's withholdings implicate national security concerns, such review is "particularly a last resort[, and] a court should not resort to it routinely on the

theory that 'it can't hurt.'" *Id.* at 10 (quoting *ACLU*, 628 F.3d at 626). Here, the plaintiff has not presented any credible evidence that the CIA's two declarations—detailing, document by document, the information redacted—was inaccurate or issued in bad faith.

In sum, the CIA's search was adequate to locate all responsive documents, the exemptions invoked to withhold certain information were properly asserted, and all reasonably segregable information has been released. Accordingly, summary judgment is granted to the CIA as to the plaintiff's FOIA claim. The plaintiff's cross-motion for summary judgment in its favor with respect to "all withholdings made pursuant to the CIA Act of 1949 which are not personnel-related" is denied as moot, because in the final analysis, the CIA does not appear to have withheld any information pursuant to the CIA Act that is not personnel related.

## B.   Second Cause of Action—Challenging CIA's Aggregation of the 2014 FOIA Requests

The plaintiff's second claim alleges that its two FOIA requests—one requesting documents about Erich Mielke that are created or maintained by the MPAC or OLA and the second requesting documents about Erich Mielke that are maintained everywhere else within the CIA—were aggregated, contrary to the plaintiff's specific instruction not to combine the two requests and the CIA's own regulation regarding aggregation. FAC ¶¶ 33–37. According to the plaintiff, the combination of the two requests resulted in harm "because a) CIA did not independently process the first request, which is not vulnerable to CIA's complaints about scope and would not allow a *Glomar* response; and b) even in the absence of a *Glomar* response, CIA would complete processing the first request well in advance of the second, thereby entitling LOOKS to a release of those MPAC/OLA records much sooner than it would receive from the processing of a combined request." *Id.* ¶ 39. To remedy this claim asserted under the FOIA and the APA, FAC at ¶ 41, the plaintiff seeks an order that the "CIA [] process LOOKS' request for

MPAC/OLA records separately and independently from the other request," and "preliminary and permanent injunctive and/or declaratory relief as may be appropriate," FAC at 10 (Prayer for Relief). The CIA moves to dismiss the APA claim on grounds that the FOIA provides an "alternative avenue of relief." Def.'s Mem. Supp. Mot. Dismiss at 4, ECF No. 27. The plaintiff opposes dismissal, and, instead has moved for summary judgment on this count. *See* Pl.'s Cross-Mot. for Summ. J., ECF No. 31.

Since the filing of the plaintiff's First Amended Complaint, the CIA has withdrawn its initial *Glomar* response to the plaintiff's requests, performed an adequate search, found twenty-seven responsive documents, sixteen of which were either released in full or in redacted form. Pl.'s SMF ¶¶ 14–15. In view of these events and the Court's grant of summary judgment to the CIA in the first claim, the plaintiff's second claim is now moot.

Under Article III of the United States Constitution, this Court "may only adjudicate actual, ongoing controversies." *District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). The mootness doctrine prohibits the court from deciding a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)); *see Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 272 (D.C. Cir. 2015).

"A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emps. Int'l Union*, 132 S. Ct. 2277, 2287 (2012)). This means that "'[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id.* (quoting *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)); *see Sierra*

*Club v. U.S. Army Corps. Of Eng'rs*, 803 F.3d 31, 43 (D.C. Cir. 2015) (explaining that a case is not moot where "the court has the 'power to effectuate a partial remedy'" (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992))); *Schnitzler v. United States*, 761 F.3d 33, 39 (D.C. Cir. 2014) (holding a plaintiff's "claim is not moot" where "he has not received all the relief he sought"); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (ellipsis in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974))); *Schnitzler*, 761 F.3d at 37–39 ("A case is moot when 'a party has already obtained all the relief that it has sought.'" (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013))). A party's "'prospects of success' on [] a claim are 'not pertinent to the mootness inquiry.'" *Schnitzler*, 761 F.3d at 39 (quoting *Chafin*, 133 S. Ct. at 1024)).

Here, the plaintiff has already received all the responsive, non-exempt documents to which it is entitled, and, therefore, no longer has any "concrete interest" in the outcome of this claim. *Campbell-Ewald*, 136 S.Ct. at 669. Even if the CIA had wrongfully aggregated the plaintiff's two requests, that harm is "'unaccompanied by any continuing, present adverse effects.'" *Steel Co.*, 523 U.S. at 109. The plaintiff's second claim is therefore dismissed as moot. Accordingly, the CIA's supplemental motion to dismiss and the plaintiff's cross-motion for summary judgment are both denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, the CIA's motion for summary judgment on the plaintiff's first claim is granted, the CIA's supplemental motion to dismiss the plaintiff's APA claim is denied as moot, and the plaintiff's cross-motion for summary judgment is denied as moot.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

**DATE:** August 5, 2016

_____
BERYL A. HOWELL
Chief Judge